IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DOUG JANDA,** | § | |
| Plaintiff, | § § § | |
| | § | Civil Action No. H-05-3951 |
| v. | § § § | |
| **VIDEO MONTHLY, L.P.,** | § § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Plaintiff has brought this case seeking from his former employer, Video Monthly L.P. ("VM"), damages and injunctive relief pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* Plaintiff has abandoned his claim against Defendant Harry Reed & Co., Inc. VM has moved for summary judgment. For the reasons that follow, summary judgment is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**.

### FACTS

The material facts are not disputed. Plaintiff had worked for VM for more than five years before he was terminated on October 28, 2005. He was a beneficiary of VM's health insurance plan. Plaintiff and other employees were required to keep track of their time via a time clock and time cards on which they punched their hours.

The manager of VM was Jim Weston. On Thursday, October 13, 2005, when Mr. Weston was supposed to be off work, he came into the office. When Mr. Weston appeared, he noted the absence of another employee, Sarah Miller. He checked Ms. Miller's time card, however, and noted

that her card showed her as having clocked in and clocked out that morning, at times very close to the times Plaintiff had clocked in and clocked out. Specifically, Plaintiff's clock in time was 7:03 a.m. and Ms. Miller's was 7:13 a.m. Ms. Miller's clock out time was 9:10 a.m. and Plaintiff's was 9:15 a.m. Later in the day, after Mr. Weston saw Plaintiff at the time clock, he checked Ms. Miller's time card again, and noticed that the times punched in the morning were blacked out. There was no indication of who had done the blacking out.

Mr. Weston was next in the office on Monday, October 17. When he checked Ms. Miller's time card this time, he found that the initials "DJ" appeared next to the blacked out portion. On October 26, Mr. Weston met with Robert Penn and Robin Reed, the Vice-President and President, respectively, of VM's general partner, to discuss the time cards. It was agreed that Mr. Weston and Mr. Penn would together meet with Ms. Miller and Plaintiff on October 28. Further, it was decided during that meeting that if Plaintiff offered no explanation for the time cards other than accident or mistake, he would have to be fired. On October 27, Mr. Weston confirmed with Ms. Miller that she had not been in the office on October 13. She said that Plaintiff had told her that he had mistakenly used her time card. On the same day, Mr. Weston asked Plaintiff what had happened. He explained that he had used Ms. Miller's time card by mistake and had subsequently crossed out those entries and initialed the card. In his affidavit, Mr. Weston states that he then again concluded that he would probably have to fire Plaintiff. He further offers documentation showing that at 1:01 p.m. on October 27 he sent payroll information for various employees to Mr. Penn, and that he calculated Plaintiff's time on the assumption that October 28 would be his last day on VM's payroll.

Later on October 27, Plaintiff told Mr. Weston that he planned to have surgery on his neck during the week of Thanksgiving, and would need to take off October 31, also for medical reasons. Mr. Weston attests that he did not pursue this matter with Plaintiff or with VM's insurance carrier. On that same day, the carrier approved Plaintiff's proposed surgical procedure.

The following day, October 28, Mr. Penn and Mr. Weston met with Ms. Miller and then with Plaintiff. Ms. Miller said she had no prior knowledge that Plaintiff was going to make the entries on her time card, and she had made no agreement with him. Mr. Penn and Mr. Weston then met with Plaintiff and showed him copies of the pertinent time cards. Plaintiff did not offer any explanation for the entries on Ms. Miller's card other than that he had made a mistake. They then terminated Plaintiff. VM subsequently paid Plaintiff for his time through October 28, 2005, together with accrued vacation hours and sick time.

Later in the afternoon on October 28, Mr. Weston telephoned VM's insurance carrier concerning the procedure with regard to an employee who had been terminated. The carrier's representative explained how such an employee could purchase continuing coverage, Mr. Weston sent this information to Plaintiff, and Plaintiff did extend his coverage.

## II. THE PARTIES' CONTENTIONS

Plaintiff asserts that VM unlawfully terminated him as a result of trying to exercise his rights under VM's health plan, in violation of ERISA. VM admits that it was an "employer" and "plan sponsor" within the meaning of ERISA. It contends, however, that it had already tentatively decided to terminate Plaintiff because of the false entries on the time card *before* Mr. Weston learned, on October 27, that Plaintiff needed an expensive operation. Therefore, Defendant argues that it had a legitimate non-discriminatory basis for its actions towards Plaintiff.

## III. SUMMARY JUDGMENT

### A.    Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

## IV. ANALYSIS

Plaintiff's case is not frivolous. Prior to the incident with Ms. Miller's time card, Plaintiff was considered a valuable employee of VM, where he had worked since 2000. Mr. Weston had even written positive letters of recommendation for him. Plaintiff also points to evidence showing that VM was concerned, as most employers are, with the rising cost of health insurance, and that additional claims by employees such as Plaintiff could serve to increase that cost to VM. The timing of Plaintiff's discharge, one day after he informed Mr. Weston of his need for surgery, is also of concern. So, too, is the delay in between the infraction and the termination.

Still, to establish a *prima facie* case under ERISA, Plaintiff must show that VM acted with specific retaliatory intent to prevent his exercise, or future exercise, of rights under an employee benefit plan. *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 761 (5th Cir. 1996). This Plaintiff has failed to do. Stamping a time clock – not once but twice on the same day – for another

employee could be considered grounds for termination in any place of employment. Neither in Plaintiff's discussions with VM personnel in 2005 nor in any of his writings in this Court has Plaintiff offered any explanation for this misconduct other than that it was a mistake. Especially in view of Plaintiff's subsequent blacking out of the time entries, and then his having – still later – affixed his initials, the explanation of simple mistake is exceedingly hard to accept. Although the Court is required to view facts in the light most favorable to the non-movant, it is not required to accept as true a statement that no reasonable person would believe. *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997); *White v. Omega Protein Corp.*, 390 F. Supp. 2d 604, 609 (S.D. Tex. 2005).

Moreover, the uncontroverted documentation attached to Mr. Weston's affidavit does clearly indicate that, before he even knew of Plaintiff's upcoming surgery, he had tentatively concluded to fire Plaintiff. Plaintiff does offer an alternative explanation as to why the documentation reflects he would not be working on, or receiving payment for, October 31. Specifically, Plaintiff claims that he was planning to be out on sick leave on October 31. This explanation, however, is also not credible as the record is clear that VM did pay employees for sick leave, as demonstrated by the fact that Plaintiff was paid for his accumulated sick leave after he was terminated.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED**. This case is **DISMISSED WITH PREJUDICE**. Each party shall bear his or its own attorneys' fees.

**IT IS SO ORDERED.**

Signed at Houston, Texas this ___11th___ day of ___July___ 2007.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE